# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY DELEAL,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>KEN CLARK, Warden,<br><br>　　　　　　　　　Respondent. | Case No.: 19-cv-00522-MMA-NLS<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

## I. INTRODUCTION

Petitioner Rudy Deleal ("Petitioner" or "Deleal"), a state prisoner, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction for driving under the influence of a drug causing injury in case number SCD265087. (ECF No. 1 at 2.) Respondent filed an answer, arguing that Petitioner's petition fails on the merits, and lodged the court records. (ECF No. 6; ECF No. 7 ("Lodgment").) Petitioner was provided with the opportunity to file a traverse by July 10, 2019, (ECF No. 4 at 2,) but has failed to do so to date. After reviewing the parties' submissions and the lodgments, and for the reasons discussed below, the Court **RECOMMENDS** the Petition be **DENIED**.

///

## II. FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal opinion:[1]

> Megan, a stay-at-home mother and part-time model, lived with her two children and their father in an apartment in San Diego, California. On an evening in December 2015, Megan went for a walk on University Avenue to a nearby store.
>
> Around the same time, Jesus Contreras was driving westbound on University Avenue. Contreras observed a sport utility vehicle (SUV) driving two cars in front of him. The SUV was zigzagging and swerving between lanes. Contreras reached for his phone to call 911 because he believed the driver of the SUV was under the influence. Contreras saw the SUV slow down and move to the right as if it was going to park. The SUV then accelerated onto the sidewalk and crashed near a recycling center.
>
> Shawn Johnson was at a car wash on University Avenue when he heard tires screeching and a thumping sound of a vehicle hitting something. Johnson turned and saw Megan fly into the air, land on the ground, and roll over. The vehicle then crashed and stopped. Johnson took a picture of the vehicle and called 911.
>
> San Diego Police Officer Wilton Garbutt responded to the scene of the accident. When he arrived, Officer Garbutt saw that a SUV had collided with a traffic sign and Megan was lying in the parking lot of the car wash. Megan was unconscious and bleeding from her head. Deleal was slouched in the driver's seat of the SUV. He was unconscious.
>
> Officer Garbutt knocked on the window of the SUV several times, but Deleal did not respond. Officer Garbutt broke the passenger window of the SUV to unlock the doors. The keys to the SUV were still in the ignition. Officer Garbutt placed the car in park and took the keys out. Deleal was still unconscious when paramedics arrived approximately five minutes later.

---

[1] This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). Here, Petitioner does not raise a challenge to any of these facts.

Officer Michael Gottfried obtained surveillance video from the car wash. The video showed the SUV committing a traffic violation by moving unsafely to the right, leaving the paved portion of the roadway, and striking Megan who was walking on the sidewalk. The SUV came to a stop when it crashed into a street sign.

Paramedics transported Megan and Deleal to the hospital. Megan did not remember being struck by a vehicle. When she woke up in the hospital, she was in extreme pain and was having difficulty breathing. She had a large hematoma and contusion near he left eyebrow. She was missing two teeth and a third was partially broken. Megan had a swollen lip, abrasions on her hands, and blood in her mouth. A scan revealed that Megan had bleeding in her brain and had fractured her pelvis. After she left the hospital, Megan had to learn to walk again and undergo speech therapy. At the time of trial, Megan still had memory loss, pain throughout her body, and migraines.

Dr. Mark Cannis treated Deleal. When he first came into the hospital, Deleal was "poorly responsive," his eyes were closed, and he did not respond to questions. He was snoring and breathing slowly. Dr. Cannis performed numerous blood tests on Deleal. The tests were negative for alcohol. A urine test showed positive for methamphetamine, amphetamine, marijuana, and a tricyclic antidepressant medication. Subsequent laboratory tests on Deleal's blood samples confirmed methamphetamine at 254 nanograms per milliliter and amphetamine at 22 nanograms per milliliter.

Dr. Cannis testified that initial symptoms of methamphetamine intoxication include agitation, hyperactivity, delirium, and delusional behavior. The person may also have hallucinations or a fast heart rate. As the methamphetamine wears out of a person's system, the person typically has a "profound degree of somnolence and fatigue and tiredness. It's as if they haven't – well, in some cases it is because they haven't slept for days." Dr. Cannis had seen many patients who had experienced seizures from marijuana use. In Dr. Cannis's opinion, a combination of methamphetamine and marijuana could increase the possibility of seizures.

Based on his training and experience, Dr. Cannis concluded that Deleal had a provoked seizure from methamphetamine and sympathomimetic abuse. Dr. Cannis explained that sympathomimetic refers to a substance or drug that causes a person to act in an agitated, delirious, or adrenaline provoked state. According to Dr. Cannis, it was possible that Deleal's seizure was only coincidentally associated with his positive

toxicology results. However, it was much more likely that Deleal had a provoked seizure from methamphetamine and sympathomimetic drugs. In reaching this conclusion, Dr. Cannis considered that Deleal did not have epilepsy or other factors that could cause seizures.

Ola Bawardi, a forensic toxicologist, testified that a person with a blood result of methamphetamine at a level of 254 nanograms per milliliter can be impaired for purposes of driving. For example, the person may drive too fast, drive erratically, have difficulty maintaining his lane of travel, and may not pay attention to things on the roadway. If a driver swerves in and out of traffic, makes an altered movement to the right, accelerates up a curb, strikes an individual, and then rolls to a rest, the driving pattern can be consistent with somebody who is under the influence of methamphetamine.

Bawardi testified that methamphetamine can cause a person's body to "crash," when his body becomes so fatigued that it can no longer produce the stimulating effect typically associated with the drug. During the crash phase, the person can appear almost drunk and is extremely fatigued, drowsy, and difficult to wake up. However, the person could still have internal signs of stimulation such as elevated blood pressure and heart rate. According to Bawardi, although a person crashing from methamphetamine may be difficult to wake up, he or she would not experience a prolonged period of unconsciousness. Unconsciousness for a period of several hours would be inconsistent with a person crashing from methamphetamine use.

*Defense*

Dr. Charles O'Connell, an emergency room physician and medical toxicologist, testified that methamphetamine rarely causes seizures. In general, it only happens in cases of massive overdose. According to Dr. O'Connell, Deleal's methamphetamine concentration of 254 nanograms per milliliter is at the very low end of recreational abuse. In order for a seizure to occur, a person would need a significantly higher drug concentration.

Dr. O'Connell reviewed Deleal's medical records and investigative reports regarding the accident. Dr. O'Connell testified that Deleal's level of deep sedation was not consistent with a methamphetamine "crash" because a person coming down from a methamphetamine high would wake up from prodding and stimulation. Additionally, it is not consistent with methamphetamine intoxication for a person to be unconscious at the wheel of a car after the use of the drug. In Dr. O'Connell's opinion, Deleal was not

4

19-cv-00522-MMA- NLS

significantly intoxicated by methamphetamine at the time of the accident. (Lodgment No. 6 at 2-6.) After an independent review of the trial record, the Court concludes that the California Court of Appeal's opinion represents an accurate summary of the record. (*See* Lodgment No. 1).

## III. PROCEDURAL BACKGROUND

### A. Trial Court Proceedings

Petitioner appears to have been initially charged on April 6, 2016.[2] (*See* Lodgment No. 2 at 7.) Petitioner was charged with driving under the influence of drugs causing injury. (*Id.* at 8); *see* Cal. Veh. Code § 23153(e) (2015). The prosecution also alleged "that in the commission and attempted commission of the offenses, [Petitioner] personally inflicted great bodily injury upon . . . ANDERSON," within the meaning of Cal. Penal Code §§ 1192.7(c)(8) and 12022.7(a). (Lodgment No. 2 at 8.)

On June 6, 2016, a jury convicted Petitioner of driving under the influence of drugs causing injury and found true the accompanying allegations. (*Id.* at 118-119, 121.) On September 19, 2016, the trial court sentenced Petitioner to a total of 5 years in state prison. (Lodgment No. 1-7 at 633, 635; Lodgment No. 2 at 91.) Petitioner's sentence was comprised of a middle term of two years for causing injury while driving under the influence of a drug and a consecutive sentence of three years for personally inflicting great bodily injury under Cal. Penal Code § 12022.7(a).[3] (*See* Lodgment No. 1-7 at 635:19-26; Lodgment No. 2 at 48, 91.)

///

///

---

[2] The "Complaint-Felony" in Lodgment No. 2 includes several dates on it. The date "APR 0 6 2016" appears in large, bolded font on the first page of the complaint. (Lodgment No. 2 at 7.) Another date, "2016 Jan 14" also appears on the same page. (*Id.*) Additionally, the "Declaration in Support of Arrest Warrant" was stamped on "2016 Jan 21," but was signed "on this 7th day of January 2016." (*Id.* at 10, 13.)

[3] It is not clear from the record what happened to the additional enhancement under Cal. Penal Code § 1192.7(c)(8). The jury found the allegation associated with § 1192.7(c)(8) true, but it does not appear in Petitioner's sentencing form. (Lodgment No. 2 at 119. *See id.* at 91.)

**B. Direct Appeal**

On October 25, 2016, Petitioner filed for appeal. (Lodgment No. 2 at 92.) In his direct appeal, Petitioner claimed that his conviction should be reversed on the ground that there was insufficient evidence to find him guilty of driving under the influence of a drug and that the trial court erred by denying him probation. (Lodgment No. 3 at 31, 38.) Petitioner argued that aside from an eyewitness's testimony of his erratic driving pattern, "there was no other credible showing that appellant was under the influence of a drug while he was driving." (Lodgment No. 3 at 34.) Petitioner further argued that the failure of the prosecution's expert witnesses to "opine that appellant was under the influence of methamphetamine" along with other inconsistencies in the expert testimony meant that "there [wa]s insufficient evidence, as a matter of law, to support the conviction." (Lodgment No. 3 at 34, 36–37.) On September 22, 2017, the California Court of Appeals rejected petitioner's argument stating that "[b]ased on the record before us, the jury's finding that Deleal was driving while under the influence was not based on speculation or conjecture. While there was some testimony that may have contradicted the jury's finding, there was ample evidence to support the finding." (Lodgment No. 6 at 9–10.)

On November 1, 2017, Petitioner sought review from the California Supreme Court. (ECF No. 1 at 3.) On review, Petitioner presented the same issues that he had raised with the California Court of Appeals. (*See* Lodgment No. 7.) On December 13, 2017, the California Supreme Court denied petitioner's petition for review without further comment. (Lodgment No. 8.)

**C. Federal Habeas Proceedings**

On March 19, 2019, Petitioner filed the instant federal petition for writ of habeas corpus in this Court. (ECF No.1 at 1.)

**IV. STANDARD OF REVIEW**

This petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: "(1)

6

resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law," 28 U.S.C. § 2254(d)(1), "or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding." 28 U.S.C. § 2254(d)(2); *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting 28 U.S.C. §2254(d)(1); § 2254(d)(2)).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies a very deferential review, inquiring only whether the state court's decision was "objectively unreasonable." *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applied a rule different from the governing law set forth in [Supreme Court] cases, or if it decide[d] a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court is not required to cite Supreme Court precedent when resolving a habeas corpus claim, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *See Early*, 537 U.S. at 8. For purposes of § 2254(d), clearly established federal law, means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (citing *Williams*, 529 U.S. at 405, 413).

"The court may grant relief under the 'unreasonable application' clause if the state court correctly identifie[d] the governing legal principle from [Supreme Court] decisions but unreasonably applie[d] it to the facts of the particular case." *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 407-08).

To meet the "unreasonable application" standard, a "state court's decision [must] be more than incorrect or erroneous." *Lockyer* 538 U.S. at 75 (citing *Williams*, 529 U.S. at 410, 412). Further, a federal court reviewing a habeas petition "must determine what arguments or theories supported, or . . . could have supported, the state-court decision; and then it must ask whether it is possible fairminded jurists could disagree that those

7

arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is an extremely deferential review and imposes a heavy burden on the Petitioner to prove that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

To determine if "a decision was based on an unreasonable determination of the facts in light of the evidence presented," the state court's factual findings "are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. 2254(e)(1)). A state court's decision "will not be overturned on factual grounds unless" its factual determinations were "objectively unreasonable in light of the evidence presented in state court." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)); 28 U.S.C. § 2254(d)(2); *see also Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004) (citing *Lockyer v. Andrade*, 538 U.S. at 75) *overruled on other grounds by Murray v. Schirro*, 745 F.3d 984, 999-1000 (9th Cir. 2014), *as recognized in Kirkpatrick v. Chappell*, 926 F.3d 1157, 1170 n.3 (9th Cir. 2019).

When state's highest court does not provide a reasoned decision, the Court "look[s] through" it to the underlying appellate court decision and presumes that the higher court's "unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). *See also Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1996). Although not entitled to perform a de novo review, if the dispositive state court does not "furnish a basis for its reasoning," federal habeas courts must conduct "an independent review of the record . . . to determine whether the state court clearly erred in its application of

controlling federal law." *Delgado v. Lewis*, 223 F.3d 976, 981, 982 (9th Cir. 2000) (citing *Tran v. Lindsey*, 212 F.3d 1143, 1153 (9th Cir. 2000)), *overruled on other grounds by Lockyer*, 538 U.S. at 75-76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (citing *Delgado*, 223 F.3d at 982).

## V. DISCUSSION

In this federal habeas petition, the only issue raised by Petitioner is a challenge to the sufficiency of the evidence supporting his conviction. (*See* ECF No. 1-2.)[4]

As a threshold matter, there is some confusion in Petitioner's memoranda as to which section of AEDPA Petitioner is moving under. In his petition, Petitioner states that the issue raised is "[i]nsufficiency of the evidence to support conviction, under *Jackson v. Virginia* (1979) 443 U.S. 307." (ECF No. 1 at 2.) The heading for Petitioner's argument reads "Petitioner's conviction should be reversed because under *Jackson v. Virginia* (1979) 433 U.S. 307, the evidence was insufficient to support the element requiring proof that he was under the influence of a drug." (ECF No. 1-2 at 18.) Petitioner then asserts that he should be issued a writ of habeas corpus because he can meet the requirements of 28 U.S.C. § 2254(d)(2). (*Id.* at 19, 18.) However, the Ninth Circuit has held that "§2254(d)(2) is not readily applicable to *Jackson* cases" because it "does not describe the task of a court in performing a *Jackson* analysis." *Sarausad v. Porter*, 479 F.3d 671, 677, 678 (9th Cir. 2007) *reversed on other grounds Waddington v. Sarausad*, 555 U.S. 179 (2009), *as recognized in Martinez v. Gonzalez,* Case No.: 17-cv-1760-WQH-AGS, 2019 WL 1590471, at *3 (S.D. Cal. Apr. 12, 2019), *appeal docketed*, No. 19-55440 (9th Cir. Apr. 18, 2019); accord *Flores v. Beard*, 533 F. Appx. 730, 731 n.1 (9th Cir. 2013). "We therefore evaluate a state court's resolution of a *Jackson* sufficiency-of-the-evidence claim in all cases under § 2254(d)(1) rather than §2254(d)(2)." *Sarausad*, 471 F.3d at 678. Following this Ninth

---

[4] Petitioner failed to file a timely traverse in this case. However, the claims made by Petitioner in his memoranda supporting his Petition do not provide any authority to support a claim that the California Court of Appeal's decision was "contrary to" clearly established Federal law. (*See* ECF No. 1-2 at 19-20); 28 U.S.C. § 2254(d)(1). As a result, the Court will not perform any analysis under the "contrary to" prong of § 2254(d)(1).

Circuit precedent, this Court will analyze Petitioner's claims under § 2254(d)(1).

## A. Sufficiency of the Evidence

The Supreme Court's primary precedent on sufficiency of the evidence is *Jackson v. Virginia*. 443 U.S. 307, 317–324 (1979), *superseded by statute*, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 1-4-132, 110 Stat. 1214, *as recognized in Starr v. Mitchell*, No. 98-4541, 2000 WL 1529807, at *3 (6th Cir. Oct. 6, 2000);[5] *accord Foley v. Kernan*, Case No.: 16-CV-408 JLS (BGS), 2018 WL 3426209, at *3 (S.D. Cal. July 16, 2018).[6] The Supreme Court has held that "the Due Process Clause . . . protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson*, 443 U.S. at 315 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). In *Jackson*, the Supreme Court established that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." 443 U.S. at 318. However, a court reviewing such evidence should not "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." *Id.* at 318–19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)) (alteration in original) (internal quotation marks omitted). Rather, a reviewing court is called upon to evaluate "whether, after viewing the evidence in the light most favorable

---

[5] Although *Jackson* has been superseded by AEDPA, the *Jackson* standards for sufficiency of evidence have continued to be applied by courts in the Ninth Circuit. *See e.g., United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010); *Maquiz v. Hedgpeth*, 907 F.3d 1212, 1217 (9th Cir. 2018); *Foley v. Kernan*, Case No.: 16-CV-408 JLS (BGS), 2018 WL 3426209, at *3-4 (S.D. Cal. July 16, 2018); *Granados v. Montgomery*, Case No.: 19cv0517 GPC (NLS), 2019 WL 3288953, at *11 (S.D. Cal. July 22, 2019). The Supreme Court has also reaffirmed the *Jackson* standard. *See McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010). Therefore, the Court has applied the *Jackson* standard to this case.

[6] In its discussion of the sufficiency of the evidence in Petitioner's case, the California Court of Appeal drew its definition of "'[s]ubstantial evidence'" from *People v. Gallardo*, 22 Cal. App. 4th 489, 492 (1994). (Lodgment No. 6 at 7.) *Gallardo* in turn quoted from *People v. Johnson*, 26 Cal. 3d 557, 578 (1980), which relied heavily on *Jackson v. Virginia*, 443 U.S. 307 (1979). As a result, the general standard for sufficiency of the evidence is ultimately drawn from *Jackson*. *See e.g.*, *Foley v. Kernan*, 2018 WL 3426209, at *3 (finding that by citing state precedents that "directly rely on *Jackson v. Virginia* . . . the California Court of Appeal correctly identified the governing legal rule.").

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (alteration in original). The *Jackson* Court further specified "that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Id.* (alteration in original).

The Ninth Circuit has interpreted *Jackson* as creating "a two-step inquiry." *U.S. v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010). Using the language of *Jackson*, the Ninth Circuit held that a court evaluating the sufficiency of evidence must first consider that evidence "in the light most favorable to the prosecution" and in doing so, presume that any factual conflicts in the record were resolved "'in favor of the prosecution.'"[7] *Id.* (quoting *Jackson*, 443 U.S. at 326). Second, "the reviewing court must determine whether this evidence . . . is adequate to allow '*any* rational trier of fact [to find] the essential elements . . . beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319) (alterations in original). This inquiry should be applied "with reference to the elements of the criminal offense as set forth by state law." *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005) (citing *Jackson*, 443 U.S. at 324 n. 16); *accord Gonzales v. Gipson*, 701 Fed. Appx. 558, 560 (9th Cir. 2017) (quoting *Juan H.*, 408 F.3d at 1275). Circumstantial evidence may be sufficient by itself. *Granados v. Montgomery*, Case No.: 19cv0517 GPC (NLS), 2019 WL 3288953, at *11 (S.D. Cal. July 22, 2019) (quoting *Maquiz v. Hedgpeth*, 907 F.3d 1212, 1218 (9th Cir. 2018)). However, the Ninth Circuit has noted that "[s]peculation and conjecture cannot take the place of reasonable inferences and evidence -- whether direct or circumstantial." *Juan H.*, 408 F.3d at 1275.

Additionally, the Ninth Circuit has specified that "[a]fter AEDPA, we apply the standards of *Jackson* with an additional layer of deference." *Juan H.*, 408 F.3d at 1275

---

[7] The full quote from *Jackson* reads as follows: "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." 443 U.S. at 326.

(citing 28 U.S.C. § 2254(d)).[8] Finally, decisions of circuit courts may be considered "to the extent that they illuminate the meaning and application of Supreme Court precedents," *id.* (citing *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004)), but "only 'clearly established Federal law, as determined by the Supreme Court of the United States' can be the basis for relief under AEDPA." *Id.* (quoting 28 U.S.C. § 2254(d)).

**B. Analysis**

Petitioner was convicted of violating Section 23153(e) of the California Vehicle Code.[9] (Lodgment No. 2 at 118.) This Section states:

> It is unlawful for a person, while under the influence of any drug, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver.

Cal. Veh. Code § 23153(e) (2015). The California Court of Appeal has specified that the elements of this offense are:

> (1) driving a vehicle while under the influence of an alcoholic beverage or drug; (2) when so driving, committing some act which violates the law or is a failure to perform some duty required by law; and (3) as a proximate result of such violation of law or failure to perform a duty, another person was injured.

*People v. Minor*, 28 Cal. App. 4th 431, 438 (1994) (citing *People v. Capetillo*, 220 Cal. App. 3d 211, 216 (1990)). Further, the California Court of Appeal has stated that "[t]o be 'under the influence' within the meaning of the Vehicle Code, the liquor or liquor and

---

[8] The Ninth Circuit stated in *Gonzales v. Gipson* that when "the Antiterrorism and Effective Death Penalty Act ('AEDPA') applies . . . 'we owe a "double dose of deference"' to the state court's judgment." 701 Fed. Appx. 558, 559 (9th Cir. 2017) (quoting *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013)). However, the Ninth Circuit has not clearly distinguished this standard from the AEDPA standard itself. For example, in *Juan H.*, the Ninth Circuit stated "that we must ask whether the decision of the California Court of Appeal reflected on an 'unreasonable application' of *Jackson* and *Winship* to the facts of this case." 408 F.3d at 1275 (citing 28 U.S.C. §2254(d)(1)).

[9] In the current version of the California Vehicle Code this is Section 23153(f). *See* Cal. Veh. Code § 23153(f).

drug(s) must have so far affected the nervous system, the brain, or muscles as to impair to an appreciable degree *the ability to operate a vehicle* in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties." *Byrd v. Municipal Court*, 125 Cal. App. 3d 1054, 1058 (1981) (citing *People v. Haeussler*, 41 Cal. 2d 252, 261 (1953)) (alteration in original); *accord People v. McNeal*, 46 Cal. 4th 1192-93 (2009) (quoting *Byrd*, 125 Cal. App. 3d at 1058).

Petitioner appears to argue that there was insufficient evidence to support a finding that he was under the influence of a drug at the time of the accident, thereby invalidating his conviction for driving under the influence causing injury. (*See* ECF No. 1-2 at 19–20.) Petitioner presents two primary arguments in support of this contention: First, relying on the testimony of his expert witness, Petitioner essentially argues that aside from his driving pattern, the circumstances under which he was found at the scene of the accident and the symptoms he presented following the accident were "not consistent with meth intoxication." (*Id.* at 19 (citations omitted).) Second, Petitioner argues that "neither of the prosecution's experts could say with any degree of certainty that a person presenting with petitioner's symptoms right after the collision was under the influence of methamphetamine for purposes of driving." (*Id.* at 20.)

Respondent rejects these arguments, contending that there was sufficient evidence to find Petitioner guilty. (*See* ECF No. 6-1 at 6-12.) Respondent argues that "[Petitioner's] erratic and unlawful driving, his blood test results, and the testimony of both his treating physician and the forensic toxicologist, constituted substantial evidence that [Petitioner] was under the influence of methamphetamine at the time he struck the victim." (*Id.* at 12.)

In line with the precedents established by the Supreme Court, this court "'look[s] through,'" the California Supreme Court's unexplained opinion to examine the reasoning of the California Court of Appeal. *See Wilson*, 138 S. Ct. at 1192; (Lodgment No. 8; Lodgment No. 6).

In its opinion, the California Court of Appeal rejected Petitioner's argument that

the only evidence in the record supporting the first element of the charge, driving under the influence of a drug, was the manner of his driving, which was insufficient to sustain his conviction by itself. (*See* Lodgment No. 6 at 8-9.) In so doing, the Court of Appeal highlighted additional evidence in the trial record that, in the court's estimation, tended to support Petitioner's conviction. This evidence included testimony from an eyewitness, Jesus Contreras, who observed Petitioner's erratic driving pattern, the accident itself, and believed Petitioner was under the influence. (*Id.* at 8.) In addition, the Court of Appeal noted that the prosecution had presented evidence showing that Petitioner "had methamphetamine in his blood at a level of 254 nanograms per milliliter." (*Id.*) The Court of Appeal further pointed to evidence from Ola Bawardi, a forensic toxicologist and expert witness. (*See id.* at 9, 5.) Bawardi testified that Petitioner's "driving pattern was consistent with somebody under the influence of methamphetamine," and that it was possible for a person with the same level of methamphetamine in their blood as Petitioner presented to "be impaired for the purpose of driving." (*Id.* at 9.) Finally, the Court of Appeal noted that Petitioner's elevated heart rate was a symptom that was consistent with methamphetamine intoxication. (*Id.*)

  Additionally, the Court of Appeal also rejected Petitioner's second line of argument that the conflicting testimony of expert witnesses at trial reduces the finding that he was under the influence of methamphetamine to "speculation and conjecture." (*Id.* at 9.) In rejecting Petitioner's argument that his unconsciousness was not consistent with methamphetamine intoxication, the appellate court noted Bawardi's testimony that responses to methamphetamine are very individualized and can depend on a range of factors such as the "individual's health." (*See id.*) Bawardi also testified "that seizures can occur at any level of methamphetamine intoxication." (*Id.*) Finally, the Court of Appeal highlighted the fact that although Dr. Cannis, the physician who treated Petitioner, had conceded it was possible for Petitioner's seizure to only have been coincidental to his methamphetamine levels, he testified that "it was much more likely that [Petitioner] had a provoked seizure from methamphetamine and sympathomimetic

drugs." (*Id.* at 9.) The court also emphasized that Dr. Cannis based his conclusions on his experience with thousands of methamphetamine patients, the extensive testing he had conducted on Petitioner, and that Petitioner had no history of seizures caused by other reasons. (*Id.*)

Despite the presence of contrasting evidence in the trial record, the Court of Appeal concluded that there was sufficient evidence to support the jury's finding and sustain Petitioner's conviction. Analyzing this conclusion within the context of AEDPA, this Court cannot say that the Court of Appeal's decision represented an "unreasonable application of" the standard for sufficiency of evidence established by the Supreme Court in *Jackson*. *See* 28 U.S.C. § 2254(d)(1); *Jackson*, 443 U.S. at 315, 318-19, 326. In order for a state court's decision to violate the AEDPA standard, that court's "application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. at 75 (citing *Williams*, 529 U.S. at 409). Further, the Supreme Court has clearly established that "[s]ection 2254(d) . . . [is] designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions," and that Petitioner has the substantial burden of "show[ing] that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Given these standards and the foregoing evidence considered by the Court of Appeal in reaching its decision, this Court concludes that Petitioner has not made the necessary showing to establish that the Court of Appeal's decision represented an "unreasonable application of" the *Jackson* standard. *See* 28 U.S.C. § 2254(d)(1); *Jackson*, 443 U.S. at 315, 318-19, 326.

Moreover, based on an independent review of the record, this Court finds additional evidence not specifically cited by the Court of Appeal that could have supported the jury's verdict. (*See* Lodgment No. 1.) For example, the jury had the opportunity to view footage of the accident from a nearby security camera, which at least showed Petitioner's SUV making unsafe movements before the accident. (*See* Lodgment

No. 1-2 at 95-100.) Additionally, the jury heard testimony from Dr. Cannis that while he was treating Petitioner, he "obtained a urine toxicologic panel, which showed positive methamphetamines, positive amphetamines, positive tetrahydrocannabinol, which is marijuana. Positive for tricyclic antidepression medication." (Lodgment No. 1-3 at 199:19-23.) Dr. Cannis also testified that marijuana can cause seizures and that combining it with methamphetamine can increase the likelihood of a person suffering from a seizure. (*Id.* at 226, 227.)

The record also indicated that the jury may have had reasons for discounting the testimony of Dr. O'Connell, the defense's expert witness. For instance, the Court notes that even Dr. O'Connell could not opine with certainty that Petitioner had suffered from a seizure. When asked "it's your opinion here today . . . that we don't even know if the defendant had a seizure, correct" Dr. O'Connell replied "It's possible. I mean, I don't have another explanation." (Lodgment No. 1-4 at 433:6-9.) Further, Dr. O'Connell testified that his final report stated that it was "unclear" what caused Petitioner's "altered mental status."[10] (*Id.* at 435.) Such testimony does not reflect certainty. Dr. O'Connell also conceded that his evaluation of Petitioner's records in the absence of the opportunity to personally examine him effectively amounted to "Monday morning quarterbacking." (*Id.* at 441.) Finally, when asked whether he "recommend someone driving with 254-nanograms per milliliter [of methamphetamine] in their system," Dr. O'Connell testified "[t]hat's a difficult question to answer. There are some tests that show under 200 actually enhances driving behavior. 254 is a little above that range." (*Id.* at 444:6-7,8-10; *see also id.* at 425-27.)

Petitioner's primary argument for why his writ of habeas corpus should be granted is based on perceived inconsistencies in the record, primarily in the testimony of the witnesses. (*See* ECF No. 1-2 at 19-20.) However, the Writ of Habeas Corpus is "an

---

[10] On cross-examination, the prosecutor asked Dr. O'Connell: "isn't it true that your final conclusion in this case was that the cause of [Petitioner's] altered mental status at the time of the incident is unclear?" Dr. O'Connell answered "[y]es, I believe I said that." (Lodgment No. 1-4 at 435:2-6.)

extraordinary remedy," and this Court is required to view all of the evidence presented at trial in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319; s*ee e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) ("[T]he writ of habeas corpus has historically been regarded as an extraordinary remedy. . . ."). Evaluation of evidence and resolution of factual disputes is the purview of the trier of fact. *Jackson*, 443 U.S. at 319. It is not the place of this Court to disturb the evaluations or resolutions made by the finder of fact, and any attempt to do so would be a clear violation of the standards governing review of the sufficiency of the evidence, as this Court must consider all factual disagreements to have been resolved in the prosecution's favor. *See id.* at 326 ("a federal habeas court . . . must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.") As the foregoing discussion shows, the evidence presented by Petitioner does not rise above the level of factual inconsistency or disagreement amongst the testimony presented at trial. Since the Court must presume such disagreements resolved in the prosecution's favor, the Court cannot recommend that a Writ be issued on the grounds of insufficient evidence. *See Jackson*, 443 U.S. at 326.

Finally, although not required, the Court will briefly consider the argument from Petitioner's brief that his conviction "was based on an unreasonable determination of the facts in light of the evidence presented." *See* (ECF No. 1-2 at 19-20); 28 U.S.C. § 2254(d)(2). Even under this provision, the petition fails. In order for a petition to be granted under Section 2254(d)(2), the state court's decision has to be "objectively unreasonable." *Miller-El*, 537 U.S. at 340. "It is objectively unreasonable, for example, to fail to make an obvious factual finding, to misapprehend or misstate the record with respect to material facts, or to ignore evidence in support of a petitioner's claim." *Lopez v. Jenkins*, No. 08cv0457–LAB (AJB), 2009 WL 4895274, at *2 (S.D. Cal. Dec. 10, 2009) (citing *Taylor*, 366 F.3d at 992). Petitioner appears to argue that the state court "fail[ed] to make an obvious factual finding" by not finding that Petitioner was not under the influence at the time of accident. *See Lopez*, 2009 WL 4895274, at *2; (ECF No. 1-2

at 19-20.) However, given the evidence presented at trial supporting the conclusion that Petitioner was under the influence that was addressed in the foregoing discussion, Petitioner has not made a sufficient showing that either the jury's verdict or the Court of Appeal's opinion reflected an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d)(2).

Accordingly, for all of the foregoing reasons, the Court recommends that Petitioner's habeas petition be **DENIED**.

## VI. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Michael M. Anello under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **November 6, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **November 20, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: October 15, 2019

Hon. Nita L. Stormes
United States Magistrate Judge